**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**
(Northern Division)

FREDDY FAMBA               *
          Plaintiff,        *
    vs.                 *     Case No. 1: 18-cv-03091-CCB
                      *
RITE AID OF MARYLAND, INC   *
                      *
        Defendant.     *

*   *   *   *   *   *   *   *   *   *   *   *   *   *

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MEMORANDUM OF LAW IN**
**SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by and through his undersigned counsel, files this Plaintiff's Memorandum In Opposition To Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment (Dkt. No. 22-1) is improper in this case because there are genuine disputes of material facts on each element of plaintiff's claims.

## I. INTRODUCTION

In this case, Plaintiff filed suit against Defendant, after Defendant repeatedly denied Plaintiff's reasonable request for accommodation and fired Plaintiff, in violation of the American with Disabilities Act ("ADA") and Title 20 of Maryland's State Government Article ("MFEPA"). The records in the case shows that Plaintiff was a qualified individual under the ADA, in that Plaintiff was able to perform the essential functions of his position as a stocker, Plaintiff identified accommodation that were reasonable on their face, Defendant refuse to provide Plaintiff with a reasonable accommodation, Defendant failed to engage in good faith during the interactive process and  and fired Plaintiff after refusing Plaintiff's reasonable accommodation request. Rite Aid is not entitled to summary judgment on Plaintiff's claims of disability discrimination and failure to accommodate because material facts are in dispute and Defendant is not entitled to summary judgment as a matter of law.

1

## II. DISPUTED & UNDISPUTED MATERIAL FACTS

### A.  **Plaintiff's Relevant Employment History with Defendant**

In May 28, 2002 Rite Aid hired Mr. Famba as a stocker in the CP replenishment department at Rite Aid's Mid-Atlantic Distribution Center. (Exhibit. 1 Famba Affidavit)**.** As a replenishment stocker, Mr. Famba performed the essential job duties as a stocker in a range of areas or departments, including stocking, picking, receiving, tagging, and driving.  Id. Mr. Famba carried out the essential functions of his job as a stocker working in different areas of replenishment, including as follows: 2002-2004: Replenishment/ Stocker; 2004-2006: inbound/ Receiving; 2008: RX stocker, Rx Picker 2009: Replenishment/ Stocker; 2010: Replenishment Regional 2 Stocker/Picker; and, 2012-2017 Replenishment/ Stocker, Driver and damage area. Id. (Exhibit. 11 30(b)(6) Lazor Deposition p. 30)

As a stocker, Mr. Famba was also a certified forklift driver, who drove the forklift as part of his duties. (Exhibit. 2 Silva Deposition p. 46)**.** Mr. Famba was a full-time employee, who at the time of his firing was earning $18.45 per hour. **Id.** The essential functions of Plaintiff's job as a stocker are**:** (1) Cut open boxed inventory in the storage area behind the flow rack or on the rack; (2) Place opened boxes on the appropriate shelf of the flow rack; (3) Walk the length of the flow rack; (4) Use pallet jack to stage moves; (5) Use roller cart to transport boxes to be replenished; (6) Use reach pole to assist in replenishing;  and, (7) conducts clean sweep activities ( Ex. 3 Rite Aid Job Description).

### B.  **Plaintiff's June 2017 Medical Condition, Surgery & Leave of absence**

On or about June 10, 2017, Mr. Famba became seriously and suddenly ill with "Acute Cholecystitis complicated by an ileas."  (Ex. 1 p. 1) As a result, Mr. Famba required urgent surgery to treat the condition. Mr. Famba immediately communicated this to Rite Aid and submitted a request for leave from his employment pursuant to the FMLA. Mr. Famba' s FMLA request was approved from June 12, 2017 through to July 14, 2017.  Id.

After Mr. Famba completed surgery and was discharged from the hospital on June 23, 2017, his doctors or medical service providers determined that Mr. Famba would need some time for post-operative treatment and healing. Consequently, Mr. Famba requested or applied for additional leave of absence and/or non-FMLA medical leave, which was approved by Rite Aid from July 14, 2017 through to September 11, 2017. Id.

C. **Plaintiff's Medical Releases to Return To Work, & Reasonable Accommodation Request.**

1. **September 12, 2017 Return To Work and Request for Reasonable Accommodation**

On or about September 9, 2017, Plaintiff was medically cleared or released to return to work on September 12, 2017, with restriction and request for a reasonable accommodation. Upon returning to work on September 12, 2017, Mr. Famba presented a required Rite Aid RTW Assessment Form, (hereinafter "RTW AF"). The form indicated that Mr. Famba was medically cleared to return to work with restrictions of "no lifting greater than 40lbs for 4 weeks with full clearance expected 10/12/17." (Ex. 12 RTW RA). Despite the restriction, Plaintiff was still able to perform the essential functions of his duties as a stocker, with or without the accommodation. (Exhibit. 4 Famba Deposition, Part 2, at 7) and identified intermittent brakes rest periods to aid with the lifting requirements of his position as a stocker. (Ex. 4 p. 13-24).

The RTW AF was reviewed and signed by Mr. Famba's supervisor, Antione Nelson, who promptly assigned Mr. Famba to work in an area called "RX Pharmacy", a unit in the replenishment department where Mr. Famba was a stocker and forklift driver. Within two hours of working in the RX area, lifting various sizes of boxes that were not identified by weight, Mr. Famba began feeling pain to his suture site and having shortness of breath. (Ex. 4 p. 32). Mr. Famba alerted his supervisors and was sent off work to the hospital.  Mr. Famba was seen by clinicians at UMH-Adult ER

3

Department for Right upper quadrant abdominal pain. (Ex. 4 p.33 –35).

Defendant claim that Plaintiff return to work on September 12, 2017 and expressed that he did not want to work in RX pharmacy location and went back on a leave or, requested another leave of absence after working one night. (Ex. 4 p. 25-26). However, Plaintiff was placed to work on a belt in the RX Pharmacy (Exhibit. 5 Department of Labor Licensing and Regulations (DLLR)-Hernandez Hearing Transcript p. 15). Plaintiff refused RX Pharmacy position and spoke to Ms. Hernandez. (Exhibit. 6 Department of Labor Licensing and Regulations (DLLR)-Lazor Hearing Transcript p.56). Additionally, Defendant HRA Ms. Hernandez claimed that Plaintiff never returned to work after September 12, 2017 (Ex. 5. p. 40-41). (Ex. 5 p. 16)

## 2.   September 14, 2017 Return To Work and Request for Accommodation

On September 14, 2017, Mr. Famba returned to work with medical clearance to work with restrictions of "no lifting greater than 10lbs & light duty until September 28, 2017". (Ex. 13 Adult Excuse Letter) (Ex. 4 p. 38). Mr. Famba met with Ms. Lazor and presented his medical clearance with the brief restriction. Ms. Lazor immediately denied the requested accommodation. Mr. Famba pleaded with Ms. Lazor and identified other accommodation in the "carousel, inbound and damages work area, where Plaintiff could continue to perform the essential function of his job as a stocker, without experiencing unbearable pain. (Ex. 4  p. 37-43). Ms. Lazor, however denied Plaintiff's request for the accommodation. (Ex. 4 p.37-43 49-50). This request for reasonable accommodation was refused "due to the very light lifting restriction." (Ex. 2 p. 28-29).

In response to this request for accommodation, Ms. Lazor and Ms. Hernandez directed Plaintiff to apply or reapply to extend his leave of absence because Defendant would not accommodate the request.   (Ex. 5 p.17) (Ex. 4 p.53-56). Helplessly, Mr. Famba allowed Ms. Hernandez to contact BSC and initiate the application to request extension of his leave of absence.

4

Ms. Hernandez assisted Mr. Famba to apply for the leave of absence extension which was approved

from September 13th through January 5th, 2018. (Ex. 5 p. 13, 28) (Ex. 4 p.57-58).  Ms. Hernandez

helped Plaintiff reapplied for a new leave of absence, because once Plaintiff had returned to work on

September 12, 2017, he was removed from leave status. (Ex. 5 p. 30-31, 38-39). Although Plaintiff

was directed to apply to extent his leave of absence, Plaintiff objected to the leave of absence (Ex. 4

p.57-58), because Plaintiff had opportunity to work and wanted to work and could perform the

essential functions of his job with or without accommodation.  (Ex. 2 p. 54)

### 3.  October 5, 2017, Release & Return to work & Request for Accommodation

On or about October 5, 2017, Plaintiff again submitted an RTW AF.  The RTW AF cleared

Plaintiff to return to work with temporary or partial restriction for 6-8 weeks. Walking or standing

Sitting – increase breaks with tolerance; Banding, stooping – can perform but ↑ pain; Kneeling,

squatting – need support surface, Weight-bearing lifting – 20lb restriction.  Walking up/downstairs –

can perform but ↑ time to compete with pain" The RTW AF also states: "Plaintiff very adamant about

desire to return to work despite pain.  PT recommending return to work with 20 pounds lifting

restrictions with increased rest breaks" (Exhibit. 7 RTW AF).

Ms. Lazor brought the RTW AF to Mr Silva with her "concerns about some of the temporary

and partial restrictions that were checked off. "But more than that she was very concerned about the

verbiage listed under the check- off area that stated that the patient, basically from the physician

stating, that the patient is very adamant about the desire to return to work. And based on how Ms.

Lazor interpreted that she felt as though the doctor wasn't in agreement about Mr. Famba coming

back to work. She asked me for my opinion, and when I read  it I, too, felt that the verbiage in here

made it seem as though the doctor was not in agreement, that she was only signing off on this because

of Mr. Famba being adamant about returning to work." (Ex. 2 p.30-33). Mr. Silva recommended that

Ms. Lazor, "was to have Mr. Famba go back to his physician who completed this, that we would need a document clearly stating that he is released to come to work. Without the information at the bottom stating that, basically, it's interpreted as this was going against her will. **Id.**

On October 11, 2017 Ms. Lazor "met with Mr. Famba and reviewed his October 5, 2017 return to work assessment or doctor's note. Ms. Lazor was "concerns with that note because his physician wrote that Mr. Famba was adamant that he returns to work despite his pain." During the meeting, Ms. Lazor explained to Mr. Famba, Ms. Lazor's and Mr. Silva's concerns about what was on the RTW RA. Ms. Lazor and Mr. Silva denied the accommodation request and request Plaintiff to have his medical provide completed another RTA RA. (Ex. 6 p.45-46) Lazor decided that Plaintiff's doctor returned Plaintiff to work because Plaintiff was adamant to return to work, and not because Plaintiff was medically cleared to return to work. (Ex. 6 p.52-53). Consequently Plaintiff request for accommodation was denied and Plaintiff was continued on leave.   (Ex. 6 p.48-49).

### 4.  Plaintiff's October 30, 2017 Return To Work & Request for Accommodation.

On October 30, 2017, Mr. Famba was medically cleared to return to work on October 12, 2017, with a "six (6) weeks restriction until 12/12/17".  The restriction stated, "no heavy lifting more than 35lbs; increase rest; breaks, compensation".  (Exhibit. 8 RTW RA ) Upon receipt of Plaintiff RTW RA form, Defendant claim that "it was not completed entirely, specifically the check offs that are above with the physical impact of condition, the no restrictions, temporary restrictions, or permanent total restrictions. Mr. Silva and Ms. Lazor determined that the RTW RA was incomplete and prevented a determination on the merits of the accommodation request. Plaintiff was again directed to go back to his physician and have the form completely filled out. (Ex. 2 p.34-36) Defendant was concerned about Plaintiff' bending and crouching, although no restriction was placed on Plaintiff on this RTW RA form.  (Ex. 6 p.50)

**5.   Plaintiff's December 12, 2017 Return To Work & Request for Accommodation**.

On December 11, 2017, Mr. Famba was medically cleared to return to work on December 12, 2017.  Mr. Famba's doctor did not clear Mr. Famba to return to work without work restrictions. Mr. Famba was cleared to return to work on December 12, 2017, on a 3-month restriction with limitation on "bending, stooping, Weight-bearing lifting".  The restriction stated, "no heavying lifting more than 35lbs from 12/12/17 – 3/12/18." (Exhibit. 9 RTW RA).

Again, Ms. Lazor, brought Plaintiff's RTW to Silva and express concerns in determining whether or not Defendant were able to make an accommodation or determining which position Defendant could bring Plaintiff back to. However, Defendant denied the accommodation request claiming the information on the RTW RA was unclear. There was immediate concerns about the check that was next to bending or stooping with indicating temporary or partial restrictions. After reviewing this RTW RA, Mr. Silva and Ms. Lazor decided to have "a phone conversation with Mr. Famba to ask some additional questions and ultimately request additional information to help us make a decision." They expressed concern about the bending and the stooping, specifically. They "felt that there was not any position within our building here or our retail operation where we could accommodate a restriction of bending and stooping." Mr. Famba was again asked to obtain some additional information from his physician indicating what that exactly means; is there a degree of bending, can he bend at times but need a break? Defendant asked Mr. Famba to provide us - to ask his physician to provide us with more detail to help us with making a decision. (Ex. 2. p. 40-45) The December 11th 2017 RTW RA was directly handled by Mr. Silva.  Pertaining to this RTW RA, Mr. Silva did not report any information to RA BSC, in response or in relation to the December 11, 2017 return to work assessment form that no information was communicated to the Benefits Center in terms

of whether or not HR can or is going to accommodate that restriction in the December return to work? A This was an incomplete process at this point so nothing was sent back to Benefits Service Center. We were still awaiting information from Mr. Famba. (Ex. 2 p.48)

That was the -- it was during that December 11, 2017 RTW that we identified a bending a crouching issue that was listed as 4 a -- something that they could -- that he could not do or 5 it was limited, part -- temporary or partial restriction. (Ex. 10 Department of Labor Licensing and Regulations (DLLR) -Silva p.58) The pharmacy accommodation, my understanding, was that was back in September of 2017 where we did ---- offer him a position. But not after this one, which No. I was -- I was held up at the bending and stooping. (Ex. 10 p. 58-63)

### D. **Defendant's January 5, 2018 Firing of Plaintiff**

On or about January 5, 2018, Defendant fired Mr. Famba from his job as a stocker with Defendant. Defendant claim that Mr. Famba fail to submit a certified healthcare provider form to extend his leave. Defendant fired Plaintiff after Defendant repeatedly denied Plaintiff's request to return to work with a reasonable accommodation recommended by Plaintiff's doctor. Defendant did not investigate if Mr. Famba could have worked in areas that would not involve a lot of stooping or bending. Because allege lack of clarification on the RTW (Ex. 2 p.44-45)

Plaintiff was on medical leave from September 13, 2019 thought January 5, 2018.  Plaintiff fired and leave ended when Plaintiff did not return to work, and Plaintiff was. The -- he was -- he was considered LOA terminated. So, leave of absence terminated. When that happens, that comes through our benefit service center department. They did not hear from him. (Ex. 5 p.16, 18, 20)

### E. **Processing of Plaintiff's Return To Work & Request for Reasonable Accommodation.**

Defendant's leave policy and administration for employees is managed by Rite Aid Benefit Service Center ("BSC") and its Leave of Absence Department. (Ex. 11 p.15, 17).  The BSC administer

family medical leave, short and long term disability leave, leave of absence and other types of leaves. Employees request for leave benefits is initiated a case with the BSC. "The benefits service center will mail the associate a leave of absence application with instructions and they will determine whether or not they're eligible based on their length of service hours worked" (Ex. 11 p.10-50).

Defendant's disability discrimination policies, including reasonable request for accommodation based on disability, is managed and implemented by Defendant's HR department. During the relevant period, the decision makers on Plaintiff's reasonable accommodation request was Jenny Lazor, HR Manger, Chris Silva, HR Manager and Donna Hernandez, HR assistant. (Ex. 11 p.10-50).

When an associate makes a request for reasonable accommodation, Defendant HR conducts an interactive process which involve an interactive discussion with the employee who is requesting an accommodation. Defendant reviews with the job requires in relation "to the actual accommodation request or any restrictions and determine if we're able to make a reasonable accommodation that would allow them to perform the essential functions of their job." This process is schedule immediately after the request for reasonable accommodation is made.

In Plaintiff's case, Defendant "compare the weight restriction to the actual weight requirements associated with the duties of that job, and then "ask the question, is there an accommodation that we could make that would allow him to be able to lift the freight that would be required to lift. In the case of Plaintiff as a stocker, "a 40-pound lifting restriction would not be a reasonable accommodation. There would not be an accommodation that would allow him to be able to lift more than pounds. Because of the fact that he had a weight restriction and that position as a stocker requires on a frequent basis lifting more than pounds." "Our next step to that would be we would determine that we would not be able to make the accommodation for his current role. But our

next step would then be to look at other available positions that we have in the building where we could accommodate a 40-pound lifting restriction."

After Plaintiff returned to work on September 14, 2017 Mr. Lazor denied Plaintiff request for reasonable accommodation, directed that Plaintiff apply or reapply to extend Plaintiff medical leave of absence. This required Plaintiff to submit a certification of health fraction form (CHPH) along with the application because Plaintiff was removed from leave status upon return to work on September 12, 2019. (Ex. 2 p.38)

Defendant determined that it "would not be a reasonable accommodation to grant Plaintiff is requests for accommodation because with the restriction Plaintiff's allegedly could not perform aspects of his job. However, Defendant admit that by granting any of the requested accommodations or work restriction, would not have resulted in any undue hardship on Defendant.  (Ex. 2 p. 55) Furthermore, Defendant did not consider anything that he could have done that would not involve bending or stooping to accommodate Plaintiff. (Ex. 2 p.56). Additionally, Defendant did not consider the cost and expenses involved in providing the accommodation that Mr. Famba was requesting? (Ex. 2 p.58).

### III. STANDARD OF REVIEW

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," then summary judgment may be rendered. Fed R. Civ. P. 56(c). In other words, summary judgment is only to be granted when no genuine and disputed issues of material fact remain and the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). However, "[if the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come

10

forward with 'specific facts showing that there is a genuine issue for trial.' " <u>White v. Rockingham Radiologists</u>, Ltd., 820 F.2d 98, 101 (4th Cir. 1987) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)).

A genuine issue of material fact may exist if the evidence presented to the court is sufficient to indicate the existence of a factual dispute that could be resolved in favor of the non-moving party at trial. <u>Rachael-Smith v. FTDATA</u>, Inc., 247 F. Supp. 2d 734, 742 (citing Anderson v. Liberty Lobby, Inc.,477 U.S. 242 (1986)) Only "facts that might affect the outcome of the suit under the governing law" are material. <u>Anderson</u>, 477 U.S. at 248. Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In considering a motion for summary judgment, a court does not weigh evidence of a genuine issue of material fact that a party adduces against the movant's evidence, but submits it to the trier of fact for resolution. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242 (1986). In that context, a court must consider the facts and evidence of the non-moving party as true. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)</u>. In addition, all reasonable inferences drawn from disputed evidence are to be resolved in the light most favorable to the nonmoving party. <u>Pulliam Investment Co., Inc. v. Cameo Properties</u>, 810 F.2d 1282, 1286 (4th Cir. 1987). The party seeking summary judgment bears the responsibility of demonstrating the "absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, All U.S. 317, 323 (1986)."

## IV. ARGUMENT

Here, Plaintiff has raised genuine issues of material fact about whether Plaintiff is a qualified individual within the meaning of the ADA. Plaintiff sought several reasonable accommodations which Defendant denied Plaintiff.  The reasonable accommodations requested by Plaintiff does not result in any hardship to Defendant. Plaintiff was fired because Defendant denied Plaintiff's requests

for reasonable accommodation and Defendant failed to engage in good faith during the interactive process. Consequently, Defendant is not entitled to summary judgement in this case because material facts are in dispute and Defendant is not entitled to summary judgment as a matter of law. Therefore, Plaintiff is entitled to a trial on the material evidence in dispute.

### A.  Plaintiff is a qualified individual within the meaning of the ADA.[1]

To establish a prima facie case on his failure-to-accommodate claim, Plaintiff must show that (1) he qualifies as an "individual with a disability" as defined in 29 U.S.C.A. § 705(20); (2) Defendant had notice of her disability; (3) he could perform the essential functions of his job with a reasonable accommodation; and (4) the Defendant refused to make any reasonable accommodation. 29 U.S.C.A. § 794(a); Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Even if Reyazuddin establishes her prima facie case, the County avoids liability if it can show as a matter of law that the proposed accommodation "will cause 'undue hardship in the particular circumstances.'" Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 464 (4th Cir. 2012) (quoting U.S. Airways v. Barnett, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002)). Courts have reconciled and kept distinct the "reasonable accommodation" and "undue hardship" requirements by holding that, at the summary judgment stage, the employee "need only show that an 'accommodation' seems reasonable on its face," and then the employer "must show special (typically case-specific) circumstances that demonstrate undue hardship." Barnett, 535 U.S. at 401-02. Reyazuddin v. Montgomery Cty., 789 F.3d 407, 414 (4th Cir. 2015)-Finally,  to establish a claim under the ADA for a failure to accommodate, a plaintiff must show that (1) he suffered a

---

[1] "The [MFEPA] is the state law analogue to the federal [ADA] discrimination statutes, and Maryland courts traditionally seek guidance from federal cases in interpreting [it]." Westbrooks v. Baltimore Cty., Maryland, No. CV SAG-18-1777, 2019 WL 3935355, at *10 (D. Md. Aug. 20, 2019). As such, the analysis provided for Plaintiff's ADA claims is also applicable and dispositive of his claims brought under the MFEPA. In similar ADA cases where the plaintiff has brought both ADA and MFEPA claims, the courts have analyzed both claims under the ADA framework."

disability; (2) his employer knew of the disability; (3) with reasonable accommodations, he was otherwise qualified to perform the essential functions of the job; and (4) his employer refused to make such reasonable accommodations. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Baker v. City of Chesapeake, 644 F. App'x 222, 224 (4th Cir. 2016)

In the instant case, Defendant in its motion for summary judgment, did not argue or contend that Plaintiff was not an individual with a disability or that Defendant did not have notice of Plaintiff's disability. Defendant however contend that Plaintiff could not perform the essential functions of his job with a reasonable accommodation, and that Defendant in fact did provide Plaintiff with a reasonable accommodation.

### i. Mr. Famba Could Perform the Essential Functions of His Job as A Replenishment Stocker with Or Without A Reasonable Accommodation.

"Essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires" and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be essential for various reasons, including the fact that the position exists to perform that function, the existence of a limited number of employees available among whom that job function can be distributed, and the fact that the employee [**12] was hired for her expertise in that particular function. Id. § 1630.2(n)(2). In determining if a job function is essential, a court may consider the employer's judgment and the amount of time the employee must spend performing that function. Id. § 1630.2(n)(3)(i), (iii). Further, "[a] plaintiff must show that [s]he can perform the essential functions of the job at the time of the employment decision or in the immediate future." Lamb v. Qualex, Inc., 33 F. App'x 49, 57 (4th Cir. 2002) (unpublished). Blackburn v. Trs. of Guilford Tech. Cmty. Coll., 733 F. Supp. 2d 659, 664 (M.D.N.C. 2010)

In this case, Plaintiff was still able to perform the essential functions of his duties as a stocker,

with or without the accommodations requested starting September 14, 2019. (Exhibit. 4 at 7) Furthermore, Plaintiff identified additional accommodation in the form of increase work breaks and assistance with the strength or lifting requirements of his position as a stocker. (Ex. 4 p. 13-24). Plaintiff's job description list his "essential duties and responsibilities" as a replenishment stocker as: (1) Cut open boxed inventory in the storage area behind the flow rack or on the rack; (2) Place opened boxes on the appropriate shelf of the flow rack; (3) Walk the length of the flow rack; (4) Use pallet jack to stage moves; (5) Use roller cart to transport boxes to be replenished; (6) Use reach pole to assist in replenishing;  and, (7) conducts clean sweep activities ( Ex. 3 Rite Aid Job Description). None of the accommodation Plaintiff requested and identified would have prevented Plaintiff from performing forgoing essential duties and responsibilities" of Plaintiff's position as a stocker.

Although the replenishment stockers lifting requirements falls under "strength classification" of the job description, and bending stooping, etc., falls under the "physical demands" category of the job description, Defendant argue that these were also "essential duties and responsibilities".  Despite the "strength classification" and "physical demands" description for the position, Plaintiff's accommodation requests for temporary restriction with lifting, bending, or stooping, did not prevent Plaintiff from performing to foregoing "essential duties and responsibilities" of his position as a replenishment stocker.  Additionally, Defendant had over eighty (80) stockers working at any one-time LZR 29 with Defendant during the period, among whom that job function can be distributed, and Defendant never hired Plaintiff for his expertise in that particular function.

### ii.   Defendant Refused to provide Mr. Famba a reasonable accommodation

The ADA says that "discrimination" includes an employer's "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . .

employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." § 12112(b)(5)(A) (emphasis added). The ADA says that the term "'reasonable accommodation' may include . . . reassignment to a vacant position." § 12111(9)(B). US Airways, Inc. v. Barnett, 535 U.S. 391, 396, 122 S. Ct. 1516, 1520, 152 L.Ed.2d 589, 599 (2002)

"A plaintiff/employee (to defeat a defendant/employer's motion for summary judgment) need only show that an "accommodation" seems reasonable on its face, i.e., ordinarily or in the run of cases. See, e.g., Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (CA1 2001) (plaintiff meets burden on reasonableness by showing that, "at least on the face of things," the accommodation will be feasible for the employer); Borkowski v. Valley Central School Dist., 63 F.3d 131, 138 (CA2 1995) (plaintiff satisfies "burden of production" by showing "plausible accommodation"); Barth v. Gelb, 303 U.S. App. D.C. 211, 2 F.3d 1180, 1187 (CADC 1993) (interpreting parallel language in Rehabilitation Act, stating that plaintiff need only show he seeks a "method of accommodation that is reasonable in the run of cases" (emphasis in original)).

In this case, Plaintiff's September 14, 2017, accommodation request for two week restriction on lifting,  October 5, 2017, accommodation request for 6-8 weeks of work restriction, with bending stooping, and lifting, October 30, 2017, accommodation request for 6 weeks work restriction on heavy lifting and Plaintiff's December 11, 2017, accommodation request   three months, with limitation on "bending, stooping, weight-bearing lifting", and "no heavying lifting more than 35lbs, seems reasonable on their face and are ordinarily in the run of cases.  There is nothing extra ordinary about these accommodation request, which are ordinary in the course of accomodations requested in warehouse positions, such as stockers. Ex. 11p.34-35

To overcome a motion for summary judgment in an action under § 504 of the Rehabilitation

Act of 1973, 29 U.S.C.S. § 794, an employee is required to present evidence from which a jury may infer that a proposed accommodation is reasonable on its face, i.e., ordinarily or in the run of cases. A reasonable accommodation is one that is feasible or plausible. Reyazuddin v. Montgomery Cty., 789 F.3d 407, 409 (4th Cir. 2015) The "plaintiff/employee (to defeat a defendant/employer's motion for summary judgment) need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." Once the plaintiff has shown that the accommodation s/he needs is "reasonable," the burden shifts to the defendant/employer to provide case-specific evidence proving that reasonable accommodation would cause an undue hardship in the particular circumstances. US Airways, Inc. v. Barnett, 535 U.S., 122 S. Ct. 1516 (2002),

Here the facts clearly show that Plaintiff's September 14, 2017, accommodation request for two week restriction on lifting,  October 5, 2017, accommodation request for 6-8 weeks of work restriction, with bending stooping, and lifting, October 30, 2017, accommodation request for 6 weeks work restriction on heavy lifting and Plaintiff's December 11, 2017, accommodation request   three months, with limitation on "bending, stooping, weight-bearing lifting", and "no heavying lifting more than 35lbs, were reasonable on their face. However, on each occasion, Defendant refused to provide the accommodation. Furthermore, Defendant went at length to refuse to accept Plaintiff's physician judgment in clearing Plaintiff to return to work on October 5, 2019. Subsequently Defendant refused to Plaintiff's October 30, 2017 and December 11, 2017 accommodation request using the cover of the interactive process.

### iii.    Defendant Did not offer Plaintiff Any Other Position as a Reasonable Accommodation.

Defendant claimed that it "offered Famba a position at a Rite Aid retail store, which Famba likewise declined. (Ex. 7, Jennifer Lazor Deposition 30(b)(6), 99:13-100:6). Defendant also claim that the position it offered Plaintiff was the assignment Plaintiff received on September 12, 2019 in

RX Pharmacy, and no other position was offered to Plaintiff after. Defendant's own factual contradiction are enough to cast doubt on Defendant's assertions here and instead indicative of pretext for the discriminatory denial of Plaintiff's request for reasonable accommodations.

### a.  In This Case Plaintiff's Leave Of Absence Was Not A Reasonable Accommodation

Defendant, arguing that it accommodated Plaintiff in the form of extended leave, rely on the precedence in <u>Wilson</u>, that: "For purposes of the ADA, "reasonable accommodations" may comprise "job restructuring, part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), and "permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment . . . ." 29 C.F.R. § 1630.2(o) (Appendix) (2011). <u>Wilson v. Dollar Gen. Corp.,</u> 717 F.3d 337, 344-45 (4th Cir. 2013)

In this case, however, the leave offered by Defendant to Plaintiff, was not the use of accrued paid leave or providing additional unpaid leave for necessary treatment.  Plaintiff did not seek or need leave for necessary treatment, as Plaintiff's physician had return plaintiff to work.

### B.  Defendant had no special or case-specific circumstances that demonstrate undue hardship on Defendant in providing Plaintiff's Request For Reasonable Accommodations.

Once the plaintiff has made this showing, the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances. See <u>Reed</u>, 244 F.3d at 258-259 ("undue hardship inquiry focuses on the hardships imposed . . . in the context of the particular [employer's] operations'") (quoting *Barth,* 2 F.3d at 1187); [***603] <u>Borkowski</u>, *supra*, at 138 (after plaintiff makes initial showing, burden falls on employer to show that particular accommodation "would cause it to suffer an undue hardship"); *Barth,* 2 F.3d at 1187 ("undue hardship inquiry focuses on the hardships imposed . . . in

the context of the particular agency's operations"). US Airways, Inc. v. Barnett, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 1523, 152 L.Ed.2d 589, 602-03 (2002)

In this case Defendant cannot show that it conducted an undue hardship inquiry or that Plaintiff's requested accommodations "would cause it to suffer an undue hardship".  In fact, Defendant admitted that if Defendant had granted any of Plaintiff's requested accommodations or work restriction, it would not have resulted in any undue hardship on Defendant. Ex. 2 p. 55 Additionally,  Defendant did  not  consider the  cost and  expenses  involved  in  providing the accommodation that Mr. Famba was requesting?  (Ex. 2 p.58).

### C.  Defendant's Interactive Process was not done in Good Faith and Instead Geared towards Denying Plaintiff's Request for Reasonable Accommodation.

The ADA imposes upon employers a good-faith duty "to engage [with their employees] in an interactive process to identify a reasonable accommodation." This duty is triggered when an employee communicates her disability and desire for an accommodation—even if the employee fails to identify a specific, reasonable accommodation. However, an employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position. Case 8:15-cv-01817-PWG, filed on September 28, 2016 (D. Md.)(citing Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 581 (4h Cir. 2015)(quoting Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346 (4th Cir. 2013))(emphasis added).

[Moreover,] "Maryland regulations require 'an individualized assessment by the employer of the employee's abilities to perform the essential functions of a job,' a process according 'strong protection for the employee than the federal "interactive process" regulation.'"" See Id. (citing Townes, 2015 WL 5928114, at *7 (quoting Adkins v. Peninsula Reg'l Med. Ctr., 119 A.3d 146, 164 (Md. Ct. Spec. App. 2015); citing Md. Code Regs. 14.03.02.04(B)(3)). [, the defendant's,] "good-

faith duty 'to engage in an interactive process to identify a reasonable accommodation.'" Jacobs, 780

F.3d at 581 (quoting Wilson, 717 F.3d at 346).

In this case, Defendant did not conduct 'an individualized assessment by the employer of the employee's abilities to perform the essential functions of a job,' a process according 'strong protection for the employee than the federal "interactive process". Instead on each occasion, when Plaintiff requested reasonable accommodation, Mr. Silva and Ms. Lazor would seek out some technical reason to refuse the request, deny the request on speculation that Plaintiff's doctor returned Plaintiff to work against the doctor's own professional judgment; claim the very specific identified reasonable accommodation request on their faces were unclear, and immediately rejected out of hand each of Plaintiffs' request for reasonable accommodation to work to work on temporary restricted duties.   This approach by Defendant does not indicate a Defendant engaging in good faith, "individualized assessment by the employer of the employee's abilities to perform the essential functions of a job,' a process according 'strong protection for the employee than the federal "interactive process" regulation.

Furthermore, Plaintiff's September 14, 2017, accommodation request for two week restriction on lifting,  October 5, 2017, accommodation request for 6-8 weeks of work restriction, with bending stooping, and lifting, October 30, 2017, accommodation request for 6 weeks work restriction on heavy lifting and Plaintiff's December 11, 2017, accommodation request   three months, with limitation on "bending, stooping, weight-bearing lifting", and "no heavying lifting more than 35lbs, were reasonable on their face and in the nature of ordinary cases.  However, Defendant used the interactive process to frustrate Plaintiff efforts to return to work with temporary restrictions. An "employer failed to engage in good faith in the interactive process where it repeatedly ignored the employee's inquiries and doctor's note, flatly denied her request for a parking space without asking

why she needed it or for how long, and otherwise failed to work with the employee to determine whether she needed an accommodation and, if so, what measures would reasonably and appropriately fit her needs. Lenkiewicz v. Castro, No. 13-0261, 2015 WL 7721203 (D.D.C. Nov. 30, 2015) –

In Maryland, "The "qualified individual with a disability" language also appears in COMAR 14.03.02.04(B)(3). Hence, PRMC's misperception of this term colors its reading of an employer's obligation to conduct an individualized assessment to identify a reasonable accommodation under COMAR § 14.03.02.04(B)(3). PRMC argues that an employer must conduct an individualized assessment only of employees who can perform the essential functions of their currently held position. We reject this overly bridled view of an individualized assessment because it fails to recognize that the very purpose of the individualized assessment is to identify an effective reasonable accommodation. *See* Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *overruled on other grounds*, 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) ("The interactive process is the key mechanism for facilitating the integration of disabled employees into the workplace. . . .Without the interactive process, many employees will be unable to identify effective reasonable accommodations."); Sansone v. Donahoe, 98 F. Supp. 3d 946, 954 (N.D. Ill. 2015) ("[T]he entire purpose of the interactive process is for the employer to determine an appropriate accommodation[.]"). As the Court of Special Appeals aptly noted, COMAR § 14.03.02.04(B)(3) makes it an unlawful employment practice for a covered employer to fail to conduct an individualized assessment of an employee's ability to perform the essential functions of "*a* job, not simply the job that the employee held." Adkins, 224 Md. App. at 145 (emphasis in original). Requiring an individualized assessment of only those employees who can perform the essential functions of their currently held position is also inconsistent with COMAR § 14.03.02.05(B)(5), which expressly stipulates that reassignment or transfer to a vacant position is a

reasonable accommodation. We therefore reject PRMC's argument that COMAR §

14.03.02.04(B)(3) requires an individualized assessment of only those employees who can perform

the essential functions of their currently held position. Peninsula Reg'l Med. Ctr. v. Adkins, 448 Md.

197, 219-21, 137 A.3d 211, 224-25 (2016)

Defendant's interactive process policies and practice, when an associate makes a request

for reasonable accommodation, are inconsistent with Defendant's duty to conduct "an individualized

assessment of an employee's ability to perform the essential functions of "*a* job, not simply

the job that the employee held." Defendant's Human Resource conducts

an interactive process which involve an interactive discussion with the employee who is requesting

an accommodation. Defendant reviews with the job requires in relation "to the actual accommodation

request or any restrictions and determine if we're able to make a reasonable accommodation that

would allow them to perform the essential functions of their job." This process is scheduled

immediately after the request for reasonable accommodation is made.

In the case of Plaintiff, and applying its interactive policies and procedures, Defendant

compare the accommodation request with the duties of the position or job and query is there an

accommodation that we could make Plaintiff meet the requirements of his position as a stocker, in

the case of Plaintiff, more than 40 pounds.  In the case of Plaintiff as a stocker, "a 40-pound lifting

restriction would not be a reasonable accommodation because it is less than the lifting requirements

for a stocker. Defendant also did not consider anything that Plaintiff could have done that would not

involve bending or stooping, in order to accommodate Plaintiff. (Ex. 2 p.56)

Here Defendant's interactive process is not geared to identify

effective reasonable accommodations, **"**an individualized assessment of an employee's ability to

perform the essential functions of "*a* job, not simply the job that the employee held."

### D. Mr. Famba was terminated because Defendant Fail to Provide him A Reasonable Accommodation and Due To Discriminatory Treatment of Plaintiff As an Individual With A Disability.

A plaintiff has two means of showing disability discrimination under the ADA: (1) "through direct and indirect evidence," or (2) "through the McDonnell Douglas burden-shifting framework." Jacobs v. N.C. Admin. Office of the CT's., 780 F.3d 562, 572 (4th Cir. 2015). We have long observed a strict distinction between claims proceeding with direct evidence of discrimination and those proceeding under the McDonnell Douglas framework. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (end banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nasser, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013). To make a prima facie showing of disability discrimination under McDonnell v. Douglas, a plaintiff must demonstrate that (1) he has a disability, (2) he is qualified for his former position, and (3) the employer discharged him because of his disability. Jacobs, 780 F.3d at 572. Baker v. City of Chesapeake, 644 F. App'x 222, 223-24 (4th Cir. 2016) A failure to accommodate claim does not, however, require any showing of discriminatory intent. *See Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000) ("[I]f the plaintiff demonstrated that the employer should have reasonably accommodated the plaintiff's disability and did not, the employer has discriminated under the ADA and is liable."); *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 362 (E.D.N.Y. 2012) ("[T]here is no burden on Plaintiff to show that her disability played any motivating role in Electrograph's failure to provide the requested accommodation."). Peninsula Reg'l Med. Ctr. v. Adkins, 448 Md. 197, 213, 137 A.3d 211, 220 (2016)

As an initial matter, the facts in records shows evidence of direct disability discrimination against Plaintiff in Ms. Lazor's refusal to grant Plaintiff's October 5, 2019 accommodating request,

based on Ms. Lazor's speculation that Plaintiff's physician medically cleared Plaintiff to return to work against the physician's best professional judgment.

Furthermore, the factual records in the case shows that Plaintiff he has a disability, he is qualified for his former position as a stocker, and Defendant discharged him because of his disability. Defendant claim that Plaintiff's employment ended because Plaintiff did not return a CHPH form to apply or extend a leave of absence. However, Defendant by its own policy is aware that if Defendant refused to grant Plaintiff an accommodation, and Plaintiff had exhausted all his leave, Plaintiff would not qualify for leave with the effect that Plaintiff's employment would be terminated. The continuation of Plaintiff's employment was contingent on Defendant returning Plaintiff to work with temporary work restrictions. This Defendant continuously refused to do.

### E.  Wells v. BAE Sys. Norfolk Ship Repair and Hill v. Verizon Maryland, Inc., are factually distinguishable from Mr. Famba's Case

In Wells' case, the Plaintiff was medically cleared to return to work with permanent restriction before been terminated, while in the instant case, Plaintiff sought to return to work with temporary restrictions or limitation.  Prior to this Well was returned to work for extended period of time in light duty status which was not accorded Plaintiff is the instant case. Wells filed a claim for workers' compensation and was determined to be temporarily totally disabled. These are significant differences in the facts of the instant case, and Wells and arguably the Hill case. Furthermore, in the instant case, Plaintiff was able to perform the essential functions of this position as a stocker, and Plaintiff identify accomodations that were reasonable on their face. Because the facts are significantly different in Hill and Wells from the instant case, the issues are framed substantively different and the law, when applied will not have the same results.

## V. CONCLUSION

WHEREFORE, of the foregoing reasons, Defendant is not entitled to summary judgment any of Plaintiff's Claims, and Plaintiff is entitled to have the trier of facts make a determination in his case.

Respectfully submitted,

*/s/ George Rose*
George A. Rose, Esq. #26086
Rose Law Firm, LLC
200 E. Lexington St., Ste. #1305
Baltimore, Maryland 21202
Tel: (410) 727-7555
Fax: (443) 320-0962
Email: grose@roselawfirm.net

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of November 2019, a copy of the foregoing Plaintiff's Memorandum In Opposition To Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment, was sent via U.S. First Class mail, postage prepaid, and by email, to: Zachary L. Erwin, Esq., (erwin@acklaw.com)   and Ariana Dejan-Lenoir (dejanlenoir@acklaw.com) at A|C|K  ANDERSON|COE|KING, Attorneys At Law, 7 Saint Paul Street, Suite 1600, Baltimore, MD 21202, attorney for Defendant.

Respectfully submitted,

*/s/ George Rose*
George A. Rose, Esq. #2686