IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**FREDDY FAMBA,**

        **Plaintiff,**

v.                                    Civil Case No. SAG-18-3091

**RITE AID OF MARYLAND, INC.**

        **Defendant.**

## MEMORANDUM OPINION

Plaintiff Freddy Famba ("Plaintiff") filed this case against his former employer, Rite Aid of Maryland, Inc. ("Rite Aid"), alleging disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Title 20 of Maryland's State Government Article. ECF 1. Discovery is now concluded, and Rite Aid has filed a Motion for Summary Judgment ("the Motion"), ECF 22. I have reviewed the Motion, along with Plaintiff's Opposition and Memorandum in Support, ECF 31, 32, and Rite Aid's Reply, ECF 33. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant Defendant's Motion.

### I.    FACTUAL BACKGROUND

Plaintiff began working as a stocker for Rite Aid on May 28, 2002. ECF 22-4, Exh. 1 at 34:8-10, 45:1-3). The "Essential Duties and Responsibilities" of that position, as outlined in the written job description, include:

    1. Cut open boxed inventory in the storage area behind the flow rack or on the rack.
    2. Place opened boxes on the appropriate shelf of the flow rack.
    3. Walk the length of the flow rack.
    4. Use pallet jack to stage moves.
    5. Use roller cart to transport boxes to be replenished.
    6. Use reach pole to assist in replenishing.

> 7. Conducts clean sweep activities.

ECF 22-4, Exh. 2 at 18. The written description further classifies the stocker job as "heavy" in exertional level, according to the Dictionary of Occupational Titles. *Id.* at 19. In addition, the job description notes physical demands that "are representative of those that must be met to successfully perform the essential functions of this job," including the ability to "lift up to seventy-five (75) pounds and carry a distance of ten (10) feet" regularly, and "lift up to fifty (50) pounds and carry a distance of ten (10) feet" frequently. *Id.* According to the job description, stockers are also frequently required to "stoop, kneel, crouch, and/or crawl." *Id.* Plaintiff corroborated, at his deposition, that his essential duties included lifting up to 75 pounds, and bending, stooping, and kneeling. ECF 22-4, Exh. 1 at 48:6-10 (responding "Yes" when asked if he would "sometimes have to lift up to 75 pounds and carry a distance of ten feet"), 48:16-49:1.

Plaintiff underwent emergency gallbladder removal surgery on June 13, 2017. *Id.* at 77:20-79:13. He submitted the appropriate paperwork to take a medical leave of absence, including a Certification of Health Care Provider for Employee's Serious Health Condition ("CHCP"). *Id.* at 84:8-85:18. Rite Aid approved Plaintiff's initial leave of absence, and then four extensions, affording him approved leave under the Family and Medical Leave Act ("FMLA") and then non-FMLA leave from June 27, 2017 through September 11, 2017. ECF 22-4, Exh. 4 at Interrog. 5. On September 12, 2017, Plaintiff's doctor permitted his return to work, with an assessment indicating that he should engage in no lifting greater than 40 lbs. ECF 22-4, Exh. 1 at 115:18-116:10. Although stockers routinely lift in excess of that weight, Rite Aid agreed to place Plaintiff in its "Rx" function, which is not a light duty area, but tended to have boxes weighing less than 40 lbs. *See* ECF 22-4, Exh. 7 at 62:14-63:2 ("It was not light duty, but the central functions of the job did not require lifting over 40 pounds.").

However, shortly after his return to work in the Rx department, Plaintiff noted that the lifting and bending gave him pain, and he sought treatment in the emergency room. ECF 22-4, Exh. 6 at 32:6-13 ("From the work I do in Rx, that's what caused me pain."). After another brief leave, Plaintiff returned to work with an updated medical restriction providing that, for two weeks, he could not lift more than 10 lbs. ECF 22-4, Exh. 8. Rite Aid responded that no stocker positions could accommodate that restriction, and offered him an additional leave of absence, which Plaintiff declined. ECF 22-4, Exh. 6 at 54:19-55:16.

In October, 2017, representatives from Human Resources ("HR") met with Plaintiff to discuss other alternatives, due to his inability to work as a stocker. ECF 22-4, Exh. 7 at 76:1-77:19. During that meeting, Plaintiff requested to be placed in the "EAS Tagging division," but Jennifer Lazor from HR explained that that particular function is under contract with a third party, ARC Associates, and thus, could not be filled with a Rite Aid employee. *Id.* at 76:19-77:7. Plaintiff testified that he also asked about placement in three other departments, "carousel, tagging, or damages," but he acknowledged that those positions still require stocking duties, including lifting up to 75 pounds, bending, and stooping. ECF 22-4, Exh. 6 at 66:19-67:22 (responding "Yes" when asked if the carousel, tagging, and damages positions require you to lift up to 75 pounds).

Plaintiff's doctor continued to issue return-to-work forms containing restrictions, as follows:

> October 5, 2017: 6-8 weeks of lifting less than 20 pounds, with notations that bending and stooping caused increased pain, that walking or standing will require increased rest breaks, and that additional time will be needed to walk up and down stairs. ECF 22-4, Exh. 9.

> December 11, 2017: three months with no bending, stooping, and no lifting more than 35 pounds. ECF 22-4, Exh. 13.

3

Rite Aid had no positions that did not involve bending. ECF 22-4, Exh. 7 at 90:15-92:1 ("[E]very position requires bending and stooping and then the lifting as well."). Because Plaintiff was unable, with those medical restrictions, to perform his duties as stocker, Rite Aid advised him that he needed to continue to submit complete CHCPs to remain on leave and to extend his short term disability benefits, in order to protect his job. ECF 22-4, Exh. 10 (Rite Aid letter to Famba dated October 12, 2017). Specifically, Rite Aid asked him for an updated CHCP by letter dated November 24, 2017, ECF 22-4, Exh. 12, but he did not submit it. On December 20, 2017, Rite Aid offered him an additional leave of absence if he submitted a CHCP, but advised that if Rite Aid did not receive the CHCP by January 3, 2018, he would be terminated effective January 5, 2018. ECF 22-4, Exh. 15. Plaintiff did not submit the CHCP as required, and was terminated. *Id.,* Exh. 16.

Plaintiff's doctor testified that he reported to her that he could not perform the lifting requirements of his current job, and that he would like to have a desk job. ECF 22-4, Exh. 18 at 46:4-21. Plaintiff also told his social worker that he was looking for a job with no physical stress, like driving. ECF 22-4, Exh. 19 at 31:7-14.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving

party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III. ANALYSIS

Plaintiff's Complaint contains four Counts, amounting to two claims each brought under two separate statutes, the ADA and MFEPA: (1) disability discrimination, and (2) failure to accommodate. Because Maryland courts have issued few decisions interpreting MFEPA,

5

*Peninsula Reg'l Med. Ctr. v. Adkins,* 448 Md. 197, 209 (2016), courts construing MFEPA's provisions have looked to cases interpreting the ADA for guidance. *Id.* at 219 ("Although we cannot use case law construing federal statutes as a 'surrogate for analysis' of the meaning of Maryland law, we can look to federal decisions interpreting ADA provisions for guidance in construing similar clauses in FEPA."). Both the ADA and MFEPA prohibit discrimination against a qualified individual on the basis of disability. To meet the elements of his disability discrimination claim, then, Plaintiff has to establish that with or without reasonable accommodation, he could perform the essential functions of his position. *See Jacobs v. N.C. Admin. Office of the Cts.,* 780 F.3d 562, 579-80 (4th Cir. 2015); 42 U.S.C. § 12111(8) (defining "qualified individual"). The plaintiff bears the "burden of identifying an accommodation that would allow a qualified individual to perform the job," as well as "the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). "Once the plaintiff has met his burden of proving that reasonable accommodations exist, the employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer." *Id.* Notably, "'[a]n employer is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some reasonable accommodation.'" *Crawford v. Union Carbide Corp.,* No. 98-2448, 1999 WL 1142346, *4 (4th Cir. Dec. 14, 1999) (citation omitted), *cert. denied*, 530 U.S. 1234 (2000); *see also Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) (same).

### A. QUALIFIED INDIVIDUAL

In arguing that he is a qualified individual, Plaintiff contends that he was able to perform the tasks listed under "essential duties and responsibilities" in the job description, even if he were

6

unable to meet the "strength classification" and "physical demands" requirements contained therein. ECF 32-1 at 13–14. Plaintiff's argument is flawed. The tasks listed under "essential duties and responsibilities" are clearly subject to the "physical demands" requirements. For example, one of the essential duties listed is to "place opened boxes on the appropriate shelf of the flow rack." ECF 22-4, Exh. 2 at 18. The typical weight for these boxes is not listed under "essential duties and responsibilities," but instead is listed under "physical demands" on the next page of the same job description document. *Id.* at 19. This section specifically denotes that a stocker will frequently need to lift up to fifty pounds, and carry the item for a distance of ten feet. *Id.* This interpretation of the routine, essential job duties is corroborated by Plaintiff's own testimony. *See, e.g.,* ECF 22-4, Exh. 1 at 48:2-10, 49:2-5 (responding "Yes" when question asked if he would frequently lift up to fifty pounds and carry a distance of ten feet). As demonstrated by the job description and by Plaintiff's own testimony, lifting boxes of significant weight — and carrying them for at least ten feet — is not a "marginal function[] of the position," *see* 29 C.F.R. § 1630.2(n)(1), as Plaintiff erroneously contends. *See* ECF 32-1 at 13.

Plaintiff's second argument is that Rite Aid has over eighty (80) stockers working at a time, and the job of lifting heavier items could be performed by a different stocker. ECF 32-1 at 14. That argument about the reallocation of an essential function of the job to another employee will be addressed as a proposed reasonable accommodation, below. Certainly, however, the record is clear that, after his surgery, Plaintiff was unable to perform the essential duties of a stocker without any accommodation.

### B. REASONABLE ACCOMMODATION

Plaintiff agrees that a cognizable ADA claim requires him to show that he could perform the essential functions of his job with a reasonable accommodation. ECF 32-1 at 12. Importantly,

7

Plaintiff bears the burden to show that a reasonable accommodation would have enabled him to perform the essential functions of the job. *See Tyndall*, 31 F.3d at 213. Plaintiff interpreted his doctor's various work restrictions as requests for reasonable accommodation. *See, e.g.,* ECF 32-1 at 15. In other words, in Plaintiff's view, Rite Aid should have modified the position to fit the restrictions his physician had noted. Two primary facets of the physician's restrictions contravened the essential tasks of a stocker: (1) the restrictions preventing him from bending and stooping, and (2) the weight restrictions preventing him from lifting the boxes frequently required for his job. Case law establishes that an inability to perform the physical duties of a job demonstrates that an employee is not qualified for the position. *See, e.g. Wells v. BAE Sys. Norfolk Ship Repair,* 483 F. Supp. 2d 497 (E.D. Va. 2007); *Hill v. Verizon Maryland, Inc.*, 2009 WL 2060088, at *1 (D. Md. July 13, 2009). A review of those cases is instructive.

In *Wells,* the plaintiff worked as a shipfitter, which required carrying a bag weighing more than twenty pounds, bending over to complete tasks, using hand tools, and climbing stairs. *Id.* at 501-02. After suffering an injury, Wells was no longer capable of performing the physical duties of a shipfitter. *Id.* at 502. A couple of months later, she was allowed to return to work on "light-duty status." *Id.* However, her employer, BAE, had no available light-duty positions, and she was only permitted to work occasionally when light duty positions became available. *Id.* at 502–03. More than one year after her injury, Wells was informed that if she could not return to work the following month, she would be removed from BAE's payroll. *Id.* at 503. To try to preserve her job, she sent a medical release from her doctor, which medically released her to return to work, but it limited her to one hour standing and one hour sitting, prohibited her from climbing stairs, and restricted her lifting to ten pounds or less. *Id.* BAE determined that it could not accommodate

8

those restrictions, and terminated her employment. *Id.* Wells sued, alleging a failure to afford her a reasonable accommodation. *Id.* at 504–05.

The Court determined that Wells was not a qualified individual, and granted summary judgment to BAE. *Id.* at 509. The Court noted that it was undisputed that Wells could not perform her duties as a shipfitter without accommodation, and noted that it was Wells's burden to identify a reasonable accommodation. *Id.* at 508-09. The Court held:

> [W]ells has not, however, identified *any* accommodations, let alone reasonable ones, that would have allowed her to continue to perform the physical duties of a shipfitter. Given her medical restrictions, the court cannot even hypothesize an accommodation that would have allowed her to continue to perform tasks such as using hand tools, bending over, and climbing up and down stairs.

*Id.* at 509. The Court specifically rejected the notion that BAE had to create a lighter duty position to accommodate Wells. *Id.* at 510 ("It is well-settled, however, that the ADA does not require an employer to create a new position to accommodate a disabled employee.").

Similarly, in *Hill v. Verizon Maryland, Inc.,* No. CIV-RDB-07-3123, 2009 WL 2060088, at *1 (D. Md. July 13, 2009), this Court considered a case involving a service technician, whose job included "climbing poles and ladders and working aloft." OSHA and Verizon safety standards imposed weight restrictions on service technicians, in light of those aerial job duties. *Id.* Hill struggled with obesity over the course of his career, and occasionally was deemed too heavy to perform his duties, although Verizon retained him at the same title and compensation during several of those windows. *Id.* at *2. In March 2004, Hill's weight again rose above the weight limit, and he was assigned to perform clerical duties. *Id.* However, more than one year later, Hill still exceeded the weight limit. *Id.* In October 2005, Verizon informed him that his compensation would be reduced from the higher salary paid to service technicians, to the lower salary of clerical

9

assistants. *Id.* at *3. Hill chose to retire, rather than accept the formal demotion, but then sued Verizon for failure to accommodate by providing him with non-aerial service technician work. *Id.*

The Court determined that aerial work was an essential function of a service technician, and that Hill's weight precluded him from performing the aerial work safely. *Id.* at *10. Thus, summary judgment for Verizon was appropriate, because Hill could not perform the essential functions of the job, rendering him not qualified. *Id.* The Court found that offering to retain Hill, in a clerical position at the reduced clerical salary, was a reasonable accommodation. *Id.* at *12. The Court also found no evidence that other service technicians had been accommodated with non-aerial work. *Id.* at *11.

Finally, in *EEOC v. Womble Carlyle Sandridge & Rice, LLP,* 616 F. App'x. 588, 591 (4th Cir. 2015), the Court considered a claim on behalf of a Support Service Assistant whose physician precluded her from lifting more than ten pounds. The Court found that an essential duty of her position required lifting in excess of twenty pounds, and that she was not qualified for the position without accommodation. *Id.* at 594-95 ("[M]any of those tasks could at any time require lifting over 20 pounds, [thus] the ability to lift that amount is an essential function of a job."). Furthermore, the Court rejected her proposed accommodations, explaining that while "work-around methods enabled her to perform a small subset of the job's responsibilities, the ability to lift over 20 pounds was inextricably tied to the vast majority of them." *Id.* at 595. In considering her proposed reasonable accommodations, the Court reasoned:

> Excluding [plaintiff] from all heavy lifting would not have been a reasonable accommodation, and the EEOC does not argue to the contrary. Moreover, requiring assistance for all tasks that involve lifting more than 20 pounds would reallocate essential functions, which the ADA does not require.

*Id.* at 595.

Similarly, with Plaintiff in this case, there is no dispute that he is unable to perform the essential duties of his job without accommodation. In fact, whereas the employee in *Womble Carlyle* could pick up and deliver some packages, here, Plaintiff was prohibited from even bending and stooping. It is undisputed that the position of stocker requires not only the ability to bend and stoop, but also the ability to perform heavy lifting. And those functions were specifically proscribed by his physician as of the date of Plaintiff's termination. ECF 22-4, Exh. 13. The question, then, is whether Plaintiff's suggestion that he be permitted to remain in his role without bending and stooping, or lifting more than 35 pounds, constitutes a reasonable accommodation. It does not. Plaintiff has been on notice since the beginning of his employment that stockers have to move and lift heavy boxes. A stocker who is unable to do those essential tasks is not qualified for the job. *See Hill,* at \*11 ("[A]n accommodation is unreasonable if it requires elimination of an essential duty."). Rite Aid has established that there is no light duty stocker position, and the law does not require Rite Aid to create one.

The only other "reasonable accommodations" proposed by Plaintiff are unsupported by the forms submitted by his physician, or have been rejected by the Fourth Circuit. Plaintiff's suggestion that "additional rest breaks" might permit him to perform the required tasks runs contrary to the medical restrictions imposed by his doctor, which were absolute restrictions not contingent on any particular frequency. In the final iteration of the restrictions in the record, the doctor precluded Plaintiff from bending and stooping, and from lifting more than 35 pounds. Rest breaks would not have permitted Plaintiff to perform those exact tasks. It would be unreasonable to expect Rite Aid to override the explicit determination by Plaintiff's doctor that he should not be permitted to lift more than 35 pounds.

Finally, Plaintiff's suggestion that he could obtain assistance from his coworkers is not a reasonable accommodation under the law. *See Wells,* 483 F. Supp. 2d at 509-10 ("the ADA does not require an employer to shift essential functions of a disabled person's position to another employee."); *Womble Carlyle,* 616 F. App'x. at 595 (noting that the ADA does not require reallocation of essential functions). Furthermore, the ADA would not require Rite Aid to "hire an additional person to perform [these] essential function[s]." *See Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 687 (4th Cir. 1997). Thus, Plaintiff has not identified a reasonable accommodation to support his claim. Because he has not identified a reasonable accommodation, Rite Aid has no burden to establish that any proposed accommodation would pose an undue burden. Since Plaintiff could not perform the essential functions of the job, with or without a reasonable accommodation, his disability discrimination claims fail.

In light of the analysis above and the inability to identify a reasonable accommodation to support his disability discrimination claims, Plaintiff's failure to accommodate claims also must fail. *See, e.g. Rhoads v. FDIC,* 257 F.3d 373, 387 n.11 (4th Cir. 2001) (noting that to sustain a claim for failure to accommodate, an employee has to show "that with reasonable accommodation he could perform the essential functions of the position"). The Court further concludes that Rite Aid engaged in the good faith interactive process, as required by the ADA and applicable Maryland regulations. Following the submission of his first "Return to Work" assessment in September, 2017, Rite Aid worked with Plaintiff to identify the RX department as an accommodation. However, as a result of this work, Plaintiff's work restrictions were further adjusted to permit lifting of even less weight. And while Plaintiff identified the carousel, tagging, and damages departments as alternatives, he also acknowledged that those positions would, similarly, require

12

heavy lifting.[1] ECF 22-4, Exh. 6 at 66:19-67:22. In fact, Rite Aid repeatedly engaged Plaintiff in discussions about his ability to return to work, and the accommodations Rite Aid offered Plaintiff, in the form of persistent renewals of his extended leave, constitute the only reasonable accommodations that could be granted under the circumstances. The uncontroverted documentation establishes that, at the end of 2017, Plaintiff did not submit the CHCP required to maintain his extended leave, and, after fair warning, Rite Aid terminated his employment. Rite Aid's decision did not run afoul of the ADA or the MFEPA, and summary judgment is therefore appropriate.[2]

**CONCLUSION**

For the reasons set forth above, Rite Aid's Motion for Summary Judgment, ECF 22, will be GRANTED. A separate Order follows.


Dated: December 19, 2019

/s/
Stephanie A. Gallagher
United States District Judge

---

[1] Although we conclude that Rite Aid engaged in an interactive process, it would not be held liable on a failure to accommodate claim in any event because Plaintiff has not identified a reasonable accommodation as a matter of law. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) ("An employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible.").

[2] Since the MFEPA is the state analogue to the federal ADA, and Maryland courts seek guidance from cases interpreting the ADA, our analysis also forecloses Plaintiff's state law claims. *See Peninsula*, 448 Md. 197, 209 (2016).